IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAWRENCE JOHNSON, | : | HON. JEROME B. SIMANDLE |
| Petitioner, | : | Civil No. 10-2984 (JBS) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| Respondent. | : | |

APPEARANCES:

Lawrence Johnson, pro se
41144-050
F.C.I. Beckley
P.O. Box 350
Beaver, WV 25813
    Petitioner

Steven D'Aguanno, AUSA
Office of the United States Attorney
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
    Attorney for Respondent

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

This matter comes before the Court on Petitioner Lawrence Johnson's motion to vacate, alter, or amend his sentence, filed pursuant to 28 U.S.C. § 2255, on the grounds of ineffective assistance of counsel under the Sixth Amendment of the United States Constitution and actual innocence.  [Docket Items 1 and 5.]  The Court finds that the motion, files and records of the

1

case conclusively show that Petitioner is not entitled to relief and therefore his § 2255 petition will be denied without a hearing.

## II.  BACKGROUND

Petitioner was arrested in connection with a home invasion and robbery in Erial, New Jersey, which culminated in a high-speed chase that led police from New Jersey into Philadelphia, Pennsylvania.  On September 26, 2006, a grand jury returned an indictment against Petitioner Johnson and three other defendants. The indictment brought the following charges against Petitioner: conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a),(b)(1) and (b)(3) (Count 1); robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a),(b)(1), (b)(3) and 2 (Count 2); violating the Travel Act, 18 U.S.C. § 1952(a)(2), (a)(3)(B), (b), and 2 (Count 3); conspiracy to violate the Travel Act, 18 U.S.C. § 371 (Count 4); aiding and abetting the using and carrying of a firearm in violation of 18 U.S.C. 924(c), (c)(1)(A)(ii), and 2 (Count 5); and being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1) and 2.  (App.[1] 00022-00033.)

On November 20, 2006, a jury found Petitioner guilty on all counts.  [Cr. No. 06-126, Docket Item 146.]  The convictions were

---

[1] "App." refers to the Appendix to Respondent's brief which was submitted along with the response. [Docket Items 15-28.]

affirmed in <u>United States v. Hernandez, et al.</u>, 306 Fed. Appx. 719, 720-21 (3d Cir. 2009) (summarizing the crime, charges and sentences).  The Petitioner was sentenced to 424 months in prison.  Specifically, Petitioner was sentenced to 220 months on Counts 1 and 2 to be run concurrently; 120 months on Count 3, consecutive to the term imposed on Counts 1 and 2; 60 months on Count 4, concurrent to the term imposed on Count 3; 84 months on Count 5, consecutive to all other terms imposed; and 120 months on Count 8, concurrent to the term imposed on Counts 1 and 2. (App. 41.)

Petitioner filed a direct appeal of his conviction and sentence to the Third Circuit on the grounds that (1) the district court erred in admitting evidence of certain telephone calls made from prison by his co-defendants which violated the Confrontation Clause, (2) there was insufficient evidence to convict under the Hobbs Act, (3) the charge under § 924(c) should have been dismissed because the Court did not have jurisdiction over the Hobbs Act and Travel Act counts, and (4) the government improperly commented on Petitioner's failure to testify.  The Third Circuit rejected all of these claims and affirmed the sentence and conviction. <u>See</u> <u>Hernandez</u>, 306 Fed. Appx. at 721-23. The Third Circuit also found that Johnson's counsel did not have a good faith basis to argue that the evidence at trial was insufficient as a matter of law to justify Johnson's convictions.

The Third Circuit stated that "the evidence submitted against Johnson was more than sufficient to support his conviction." Hernandez, 306 Fed. Appx. at 723.  The U.S. Supreme Court denied certiorari. Johnson v. United States, 129 S. Ct. 2807 (2009).

Petitioner, pro se, timely filed this petition to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Petitioner makes several claims, some of which allegedly support a finding that his trial and appellate attorney, Edward Borden Jr., Esq., provided him with ineffective assistance of counsel in violation of the U.S. Constitution.  Petitioner asserts counsel failed (1) to object to Counts 1 and 4 as unconstitutionally duplicative which resulted in cumulative punishment and double jeopardy; (2) to file a motion to dismiss under Fed. R. Crim. P. 12(b) as to Counts 3 and 4 which Petitioner maintains were defective in the indictment; (3) to object at sentencing to errors in the presentence report regarding the calculation of Petitioner's base offense level and guideline range; (4) to object during trial to the admission of Petitioner's self-incriminating statement made while in custody; and (5) to call Nancy Smith as a witness at trial to testify on Petitioner's behalf.  Petitioner also argues that he is actually innocent as to Counts 5 and 8 because there was no proof he was in constructive possession of a firearm or that he aided and abetted the use of the firearm in the robbery.

The government responded to Petitioner's motion to vacate alter or amend his sentence and contests all of Petitioner's claims. [Docket Items 13, 43.]  Petitioner filed a reply in further support of his application for relief.  [Docket Items 31, 44.]  Petitioner then subsequently filed a motion to appoint pro bono counsel.  [Docket Item 40.]

The Court will assess each claim separately below.

## III.  STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. Id.; see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief).

Generally, an evidentiary hearing must be held to resolve issues of fact falling outside the record of the case. United

States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980). However, a hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. Id. (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). Government affidavits filed in opposition to a petition for § 2255 relief are not part of the files and records of the case and are not conclusive against the petitioner. Id.

Furthermore, not every asserted error of law may be raised on a § 2255 motion. See Davis v. United States, 417 U.S. 333, 346 (1974). The appropriate inquiry is whether the claimed error is a "fundamental defect which inherently results in a complete miscarriage of justice" and whether it presents "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. (quoting Hill v. United States, 368 U.S. 424, 429 (1962)).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the United States Constitution, and (2) the deficient performance prejudiced the defense by

6

depriving the defendant of a fair trial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To show prejudice under <u>Strickland</u>, Petitioner must demonstrate that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Gov't of the V.I. v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989) (quoting <u>Strickland</u>, 466 U.S. at 694).

## IV.   DISCUSSION

### A.   Double Jeopardy and Cumulative Punishment with regards to Counts 1 and 4

The Petitioner first argues that his counsel was ineffective for failing to argue that Count 1 charging a Hobbs Act conspiracy and Count 4 charging a Travel Act conspiracy punished the Petitioner twice for the same conduct.  Petitioner maintains that his counsel should have argued that these charges resulted in double jeopardy in violation of the Constitution and subjected him to cumulative punishment.  Specifically, Petitioner maintains that the Hobbs Act conspiracy was a lesser included offense subsumed by the Travel Act conspiracy.

The Double Jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy clause "applies to both multiple punishments and successive prosecutions for the same criminal offense."  <u>United States of America v. Conley</u>, 37 F.3d 970, 975 (3d Cir. 1994).  "The Double Jeopardy

7

bar applies if the two offenses for which the defendant is punished or tried constitute the same offense."  Id.

In determining whether a defendant is being charged twice for the same conduct, a court must analyze whether "each of the offenses created requires proof of a different element." Blockburger v. United States, 284 U.S. 299, 304 (1932).  "The particular rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Id.

The Supreme Court has offered further guidance on the application of the *Blockburger* test.  In particular, the Supreme Court has stressed that "the critical inquiry is whether the . . . [broader] offense is considered the 'same offense' as one or more of the predicate offenses within the meaning of the double jeopardy clause."  Garret v. United States, 471 U.S. 773, 786 (1985).  The Supreme Court has also stressed that the *Blockburger* test reflects the assumption that "Congress ordinarily does not intend to punish the same offense under two different statutes." Whalen v. United States, 445 U.S. 684, 692 (1980).  Consequently, the *Blockburger* test should not be controlling "where, for example, there is a clear indication of contrary legislative intent."  Id.  Importantly, the "double jeopardy clause's

8

protection against multiple punishments in a single case ensures only that a court does not impose a punishment in excess of the punishment intended by the legislature." <u>Conley</u>, 37 F.3d at 976.

In this case, Petitioner's ineffective assistance of counsel claim based on his counsel's failure to challenge Counts 1 and 4 on the basis of double jeopardy fails for two reasons.

First, the Hobbs Act conspiracy and the Travel Act conspiracy both required proof of an additional element. The Hobbs Act conspiracy required proof of an agreement to violate the Hobbs Act, which was not required for Count 4. Instead, Count 4 required proof of an agreement to violate the Travel Act. The Travel Act conspiracy required proof of an overt act in furtherance of the conspiracy which was not required for Count 1. In addition, the Travel Act conspiracy required proof of an agreement to travel interstate or to use an interstate facility which was not required under the Hobbs Act. <u>See</u> 18 U.S.C. § 1951(a); 18 U.S.C. § 1952(a). Consequently, the *Blockburger* test is satisfied and there is no double jeopardy issue.

Second, there is also no prejudice even if *Blockburger* were not satisfied. The Travel Act conspiracy conviction in Count 4 did not result in additional punishment. The sentence on Count 4 of 60 months' imprisonment for conspiracy was concurrent with the conviction on Count 3 for the substantive Travel Act violation for which the sentence was 120 months' imprisonment. Although

Counts 3 and 4 were concurrent, and their 120-month sentence was consecutive to the sentence on the concurrent Counts 1 and 2, the 120-month consecutive feature for Counts 3 and 4 was driven by the Count 3 conviction, which is not contested on double jeopardy grounds, and not by the Count 4 conviction for Travel Act conspiracy. Stated differently, if for the sake of argument Count 4 were stricken entirely, it would not shorten Petitioner's overall sentence. Accordingly, under the second <u>Strickland</u> prong, Petitioner has failed to show that the result of the proceeding would have been different.

Therefore, Plaintiff's motion to vacate, alter or amend his sentence because his counsel was ineffective in failing to object to Counts 1 and 4 on the basis of double jeopardy will be denied.

### B.   Failure to File a Motion to Dismiss Counts 3 and 4

Petitioner next argues that his counsel was ineffective for failing to file a motion to dismiss Counts 3 and 4 of the indictment which charged Petitioner with violating the Travel Act and conspiracy to violate the Travel Act, respectively. Petitioner maintains that the government failed to produce sufficient evidence of a relationship between performance of the wrongful act and interstate travel, which Petitioner argues is required under the Travel Act. Petitioner relies primarily on

10

United States v. Isaacs, 493 F.2d 1124, 1146 (7th Cir. 1974).[2]

Second, Petitioner also notes that the Travel Act counts in the Indictment charge Petitioner with an "intent to commit a crime of violence to further an unlawful activity, namely theft by extortion, contrary to the law of the State of New Jersey, that is N.J.S.A. 2C:20-5."  Petitioner argues that the only crime he was convicted of was a "simple robbery" and this robbery cannot be considered both the "unlawful activity" and the "crime of violence" under the Travel Act.  The Petitioner maintains that the unlawful activity and crime of violence must be distinct crimes in order to establish the required elements of the Travel Act.  Petitioner contends that his counsel was ineffective for failing to investigate Counts 3 and 4 of the Indictment and failing to move to dismiss these counts of the Indictment.

The government opposes this claim and argues the Petitioner has failed to show that he was prejudiced by his counsel's failure to file a motion to dismiss Counts 3 and 4.  The government maintains that the evidence at trial showed that the reason for interstate travel in this case was so the defendants

---

[2]  Petitioner also cites Mortensen v. United States, 322 U.S. 369 (1944), in support of his application.  Petitioner's reliance on Mortensen, however, is misplaced since Mortensen did not involve a violation of the Travel Act and is consequently inapplicable.  Indeed, Mortensen was decided in 1944, seventeen years prior to the passage of the Travel Act in 1961.  Therefore, Petitioner's arguments arising out of the Mortensen case are without merit.

could travel from their homes in Philadelphia to the target house in New Jersey and then escape back to Philadelphia. Consequently, the government argues that the interstate travel in this case was sufficiently related to the crime to impose liability under the Travel Act.

With regard to Petitioner's second argument, the government acknowledges that a Circuit split exists as to whether the crime of violence and unlawful activity can be based on the same conduct and there is no Third Circuit law on this issue.  The Fourth Circuit held in United States v. Lee, 726 F.2d 128 (4th Cir. 1984) that the same conduct, specifically arson, could satisfy both elements of the Travel Act.  The Ninth Circuit, in United States v. Winslow, 962 F.2d 845 (9th Cir. 1992), later held that the government must establish a defendant intended to commit a crime of violence in order to further an arson of a building or a business in order to establish a Travel Act offense.  Consequently, the Ninth Circuit concluded that the same conduct, arson, could not satisfy the crime of violence prong and the unlawful activity prong of the Travel Act.

One district court has squarely addressed this issue after Congress amended the Travel Act in 1994 to increase the maximum sentence under § 1952(a)(2) to twenty years, while leaving §§ (a)(1) and (a)(3) with a maximum of five years.  In United States v. O'Hara, 143 F. Supp. 2d 1039 (E.D. Wis. 2001), the district court conducted an extensive analysis of Section 1952(a)(2) and

12

concluded that the plain and natural meaning of the statute prohibited the government from using the same conduct to satisfy the crime of violence and unlawful activity prongs of the Travel Act.  The district reasoned:

> The government's preferred interpretation of § (a)(2) would require the verb "to further" to include a reflexive meaning; just as an ill-conceived proposal might be self-defeating, so certain crimes of violence would be self-furthering. But this reflexive interpretation offends the plain and ordinary meaning of the infinitive "to further." The government's desired reading of § (a)(2) would re-write it from what it says--"commit any crime of violence to further any unlawful activity"--into "commit any unlawful activity that is also a crime of violence," and thus would write "to further" out of the statute.

O'Hara, 143 F. Supp. 2d at 1042.  As will be discussed below, this Court finds it unnecessary to resolve the circuit split because the Petitioner here suffered no prejudice and cannot meet the second prong of the Strickland test.

In particular, the government argues that the court charged the jury that robbery was the crime of violence since the Indictment did not specify the crime of violence.  The government does not argue that Petitioner's conduct which constituted robbery[3] differed from the conduct that constituted theft by

---

[3] "Robbery" is defined by N.J.S.A. 2C:15-1 as follows: A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

13

extortion.[4]

   The government instead argues that the Petitioner has not
been prejudiced by his counsel's failure to object.  The
government maintains that if counsel had objected, the government
would have easily fixed this issue contemporaneously and asked
the court to instruct the jury that the crime of violence was
burglary[5] of a dwelling, not robbery.  The government contends

---

   (3) Commits or threatens immediately to commit any crime
   of the first or second degree.

   [4] "Theft by Extortion" is defined by N.J.S.A. 2C:20-5 as
follows:

A person is guilty of theft by extortion if he purposely and
unlawfully obtains property of another by extortion. A person
extorts if he purposely threatens to:

   a. Inflict bodily injury on or physically confine or
   restrain anyone or commit any other criminal offense;
   . . .

   g. Inflict any other harm which would not substantially
   benefit the actor but which is calculated to materially harm
   another person.

   [5] "Burglary" is defined by N.J.S.A. 2C:18-2 as follows:

A person is guilty of burglary if, with purpose to commit an
offense therein or thereon he:

   (1) Enters a research facility, structure, or a
   separately secured or occupied portion thereof unless
   the structure was at the time open to the public or the
   actor is licensed or privileged to enter;

   (2) Surreptitiously remains in a research facility,
   structure, or a separately secured or occupied portion
   thereof knowing that he is not licensed or privileged
   to do so; or

14

that there is sufficient evidence in the record to support a finding by the jury that a burglary of a dwelling occurred.  The government also argues that while the court instructed the jury that robbery was the crime of violence, it is not clear that the jury was then prohibited from finding that the crime of violence was some other crime, since the Indictment did not specify the crime.

To the extent the Circuit split becomes an issue, the government urges the court to find that the unlawful activity and crime of violence can be the same conduct under Section 1952. The government argues that both the crime of violence and unlawful activity impact the intent part of the statute and "[s]o long as Movant traveled interstate . . . and then committed any crime of violence, as long as he did so to further one of the unlawful activities specified in subsection (b), he violated the

---

(3) Trespasses in or upon utility company property where public notice prohibiting trespass is given by conspicuous posting, or fencing or other enclosure manifestly designed to exclude intruders.

     b. Grading. Burglary is a crime of the second degree if in the course of committing the offense, the actor:

(1) Purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone; or

(2) Is armed with or displays what appear to be explosives or a deadly weapon.

Travel Act."  (Gov't's Br. at 29.)

The court will address each of Petitioner's arguments in turn.  First, the court finds that there was sufficient evidence of significant interstate travel to warrant a conviction under the Travel Act.  This case is distinct from United States v. Isaacs, 493 F.2d 1124, 1148 (7th Cir. 1974), wherein the Seventh Circuit held "minimal and incidental use of interstate facilities does not constitute a violation of § 1952."  In Isaacs, the Seventh Circuit found that the government's evidence of three checks, drawn by a defendant from his account at an Illinois bank and deposited by the recipients in Illinois bank accounts which were ultimately cleared through a Missouri bank, was too attenuated to trigger Section 1952 liability because it was too incidental to constitute interstate activity under the Travel Act.  Id. at 1147-48.  The Seventh Circuit reasoned that these three checks "were incidental to the scheme" and the Defendants had no reason to know that the checks drawn on the Illinois bank account and deposited in Illinois bank accounts would ultimately clear through a Missouri bank.  Id. at 1148.  The Seventh Circuit was mindful of the Supreme Court's cautionary reasoning that "Congress in enacting § 1952 intended primarily to strike at organized crime's interstate operations and that there was no desire to alter fact sensitive federal-state relationships, or . . . transform relatively minor state offenses into federal

16

felonies." Id. at 1147 (citing Rewis v. United States, 401 U.S. 808, 812 (1971)).

Here, the Petitioner, a Philadelphia, Pennsylvania resident, was convicted of going from Philadelphia into New Jersey specifically to rob a home. There was evidence that the co-conspirators had also traveled from Philadelphia to the New Jersey home to conduct surveillance of this New Jersey residence on a prior occasion, according to the facts inferable from cell phone records in evidence. Petitioner then fled back into Philadelphia immediately following the robbery and a high speed chase ensued, ending in the violent crash of their getaway vehicle. There was nothing incidental or minimal about Petitioner's interstate travel. In this case, the Petitioner intentionally and deliberately chose to cross state lines, commit a crime and flee the state. Therefore, Petitioner's argument that there was not a significant relationship between the robbery and interstate travel to warrant liability under the Travel Act is without merit.

With regard to Plaintiff's second argument, the court finds the Petitioner has failed to establish prejudice resulting from his attorney's decision not to file a motion to dismiss Counts 3 and 4 or challenge the designation of robbery as the crime of violence. The proof presented at trial demonstrated a violent theft which involved gaining entry into the victims' residence,

17

the use of guns, defendants binding the victims who were
predominately minor children, and threatening the lives of the
victims if they did not reveal the code to the safe that these
perpetrators knew to be in the house.  If Petitioner's attorney
did object to robbery as the crime of violence, the government
would not have been without recourse as they established
sufficient proof at trial for multiple crimes of violence which
could have satisfied the requirement of the Travel Act.  The
court could easily have instructed the jury that the crime of
violence was burglary of a dwelling which was sufficiently
established at trial and would have been separate from the
unlawful activity of theft by extortion.

Therefore, the Petitioner has failed to establish the
prejudice prong of the <u>Strickland</u> test and his ineffective
assistance claim will be denied.[6]

### C.    Failure to object during trial to the admission of Petitioner's statement made while in custody

The Petitioner claims that his counsel was ineffective at
trial for failing to object to the admission of an incriminating
statement made by Petitioner while in custody.  Specifically,
Philadelphia Police Officer Robert Fredericksdorf testified at

---

[6] Since the court has concluded the Petitioner failed to
establish the requisite prejudice for his ineffective assistance
of counsel claim, the court will not address the merits of
whether the same conduct can be both the crime of violence and
the unlawful activity for purposes of a Travel Act offense.

trial about how he apprehended the Petitioner while Petitioner attempted to elude the police following the crash of the getaway vehicle.  Officer Fredericksdorf was on patrol when he heard a police radio transmission about New Jersey police officers pursuing a vehicle for an armed robbery.  App. at 293-94. Fredericksdorf traveled in the general direction of the pursuit and came upon an auto accident surrounded by New Jersey police officers.  Id. at 294-95.  Some of the occupants of the vehicle began to flee and a New Jersey police officer informed Fredericksdorf that one of the occupants, who was later determined to be the Petitioner, fled toward the rear of some houses in the area.  Id. at 295.

Fredericksdorf walked toward the alleyway where he believed Petitioner had fled and testified that he "was very nervous going into this alleyway, there's no protection there if I were to engage in any shooting or anything like that.  At the point where I first entered by myself until the officers arrived there, I was very concerned being trapped with nowhere to go." Id. at 296. The lighting conditions in the alleyway were very dark and Fredericksdorf could not see very far ahead.  Id. at 297.

Fredericksdorf then observed Petitioner hiding underneath a boat on a trailer that was parked in a yard adjacent to the alleyway.  Id.  Fredericksdorf was joined by other police officers and Fredericksdorf told them there was somebody in the

19

yard "but there are more in the area so just be careful when I'm
converging on this guy." Id.  Fredericksdorf then climbed the
fence, removed Petitioner from underneath the boat and exited the
yard.  In doing this, Fredericksdorf asked Petitioner if there
were any weapons in the yard and indicated that he "was nervous
because [he] thought there was [sic] other people behind me."
Id. at 299.  In response to Fredericksdorf's questions,
Petitioner stated that there were no weapons in the yard and
"there ain't nobody coming up on you." Id.  Petitioner's counsel
did not object to the admission of this statement into evidence.

     The government then argued in its closing that Petitioner's
statement to Fredericksdorf was evidence that Petitioner was part
of the armed robbery and was in the area because he was fleeing
from the police after the getaway vehicle crashed.  The
government urged the jury to reject Petitioner's defense that he
was not involved with the armed robbery and instead was in the
area to visit his girlfriend and only fled from the police
because he was in a drug infested area.  The government argued to
the jury:

> There's absolutely no evidence that Lawrence Johnson ran
> because he was in  a drug infested area.  Because, as
> Mr. Borden, I think, alluded to it, it may be something
> unpleasant.  What he was trying to tell you there was,
> I  guess because Lawrence Johnson  is in a drug infested
> area and he sees a police officer, he just decides to
> run.  Take this to its logical conclusion, if you're
> Lawrence Johnson,  if you're being chased by the police
> and you run and you hide under that boat and they finally
> catch you and the gig is up and Officer Fredericksdorf

comes over that fence and tells the other cop if he
starts to move, I want you to tell him not to move,
which is exactly what Officer Fredericksdorf told you
happened.

When he finally pulls him out from under that boat and
says where are the rest of them, what would a normal
person say who was just running, because he was
going to Malika Jones' house, what would a normal person
say under those circumstances? Officer, I'm sorry I
ran. I'm sorry I ran but this is a bad area and I
was just walking to my girlfriend's house, Malika Jones,
she lives over there on the 3200 block of Joyce Street.
Is that what he said? No. Officer Fredericksdorf said
where are they, they better not come up behind me. He
says they're not here. They're not going to come up not
behind you. Would a normal person say that, a person
that just ran for no reason? No, a person that wasn't
running from that SUV would have said, officer, I don't
know what you're talking about. The only reason I ran,
this is a bad area and I wanted to run from the police.
They're not behind you. That's all I have for Lawrence
Johnson.

Id. at 576.

Petitioner argues that his counsel was ineffective for not

objecting to the admission of his statement and the government's

use of this statement in its closing arguments. The Petitioner

argues that this statement was taken from him while he was in

custody prior to receiving any Miranda warnings. Therefore,

Petitioner maintains that the admission of this statement

violated his Fifth Amendment rights and his counsel was deficient

for not seeking to exclude it. Further, Petitioner argues that

this statement was crucial to the government's case against him

and had this statement been excluded, the jury would not have

returned a verdict against him.

The government argues that this statement falls squarely within the public safety exception to the Miranda requirement and therefore was properly admitted into evidence.  The government maintains that any objection by Petitioner's counsel to exclude this statement would have been futile and therefore Petitioner's counsel was not ineffective for failing to object.  In addition, the government argues that there was overwhelming evidence against the Petitioner which undercut his defense.  Consequently, even if the statement should have been excluded, the government contends that the Petitioner suffered no prejudice.

The court concludes that Petitioner's statement was properly admitted into evidence pursuant to the public safety exception to the Miranda requirement.  "Under this narrow exception, the police do not need to give the Miranda warnings before asking a suspect questions that are necessary to protect the public or the police from immediate danger.  United States v. Duncan, 308 Fed. Appx. 601, 605 (3d Cir. 2009).  This is because "the need for answers to questions in a situation posing a threat to public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."  New York v. Quareles, 467 U.S. 649, 657 (1984).  In order for the public safety exception to apply, an officer's questions must relate to an objectively reasonable need to protect the police or the public from an immediate danger.  Id. at 659 n.8; Duncan, 308

Fed. Appx. at 605.

In this case, Officer Fredericksdorf questioned the Petitioner in the dark yard area at night time if there were any weapons or other suspects in the area immediately after taking the Petitioner into custody.  Fredericksdorf began pursuing Petitioner after a high-speed chase where the occupants of the vehicle were suspects in an armed robbery.  Multiple suspects fled the scene of the accident and were being pursued by several officers in the surrounding residential area.  Petitioner was apprehended after Officer Fredericksdorf followed him down a narrow, dark alley into a resident's yard.  It was objectively reasonable for Fredericksdorf to ask the Petitioner if there were any weapons or other suspects present because these individuals were thought to be armed and were actively fleeing police.  These individuals and any weapons posed an immediate threat to the residential occupants as well as to Officer Fredericksdorf and surrounding police.  These questions were spontaneous, reasonable, and narrowly tailored to address the exigency of the situation to ascertain the immediate danger.

Therefore, the public safety exception applies and these statements were properly admitted against Petitioner at trial. Since these statements were properly admitted into evidence, the Government properly relied on them in making their closing statement to the jury.

Accordingly, Petitioner's ineffective assistance of counsel claim fails because his counsel was not deficient for failing to object to the admission of Johnson's statement into evidence or the government's allusion to his statement in closing argument.

### D. Failure to call Nancy Smith as a witness at trial to testify on Petitioner's behalf[7]

Next, Petitioner argues that his counsel was deficient because he failed to call Nancy Smith as an eyewitness to testify at trial. The Petitioner argues that his counsel failed to investigate Nancy Smith's potential testimony and did not even subpoena her as a witness. Petitioner maintains that Nancy Smith would have provided testimony to support his mistaken identity case and lend credibility to his defense that he was not one of the occupants in the getaway vehicle but simply was in the neighborhood at the wrong time.

Nancy Smith called 911 at the time of the incident and

---

[7] The government also contends in its letter brief that Petitioner argues Officer Fredericksdorf could have been impeached by his police report and police radio tape, and these arguments are without merit. The Petitioner, in his opposition, clarifies that he does not argue his counsel was ineffective for failing to use the report or police tape to impeach Officer Fredericksdorf. Petitioner maintains this aspect of his application is based solely on his counsel's failure to call Nancy Smith as a witness. Therefore, the court will primarily address whether Petitioner's counsel was ineffective for deciding not to call Nancy Smith as a witness. However, to the extent the Petitioner did argue in his brief that Officer Fredericksdorf could have been impeached with his police report and police tape, the court finds these arguments without merit for the reasons set forth in the government's letter brief, incorporated herein. [Docket Item 43, Gov't's Supp. Letter Brief at 18-21.]

reported to police that she observed two Hispanic men running down the street.  App. at 509.  Petitioner argues that since he is not Hispanic, Smith's testimony would have corroborated his defense that he was not one of the individuals fleeing the getaway vehicle.

The 911 tape was available at trial and ultimately deemed inadmissible by the Court.  The Court concluded that the tape was not terribly probative and it was unclear how Smith was able to observe the races of the two men running down the street.  In particular, the Court noted that it had "no idea how she could identify someone as looking Hispanic as they're running down the street in the dark."  App. at 511.

Further, the court found that Smith's statements in the 911 tape were consistent with the accounts of other witnesses, contrary to Petitioner's counsel's arguments at trial that Smith's statements were inconsistent.  App. at 501, 511.  Government witnesses had already testified that two of Petitioner's codefendants, Hernandez (a Hispanic male) and Brown (a light skinned African American male) ran down a nearby street and were being chased by policemen after they fled the getaway vehicle.  App. at 508.  It is highly likely that Smith saw Brown and Hernandez running down the street and that her testimony would have been consistent with other government witnesses.  In addition, counsel for codefendant Brown and codefendant Hernandez

both objected to the admission of the 911 tape for this reason.

In contrast, Officer Hirst testified that he saw another male, separate from the two men discussed above, flee the getaway vehicle. This is the man whom Officer Fredericksdorf pursued and later identified as the Petitioner. The court found that there was nothing in the 911 tape that would contradict Officer Hirst's and Officer Fredericksdorf's testimony. However, the court indicated to Petitoner's counsel if he wanted to introduce Smith's statements, he could call Smith as a witness but the 911 tapes alone were inadmissible. App. at 512.

In support of his habeas application, Petitioner argues that his counsel should have subpoenaed Nancy Smith once the court excluded the 911 tape in order to admit her eyewitness account into the record. However, the Petitioner fails to present any evidence, such as an affidavit from Smith, to show that she would have testified any differently from her observations recorded in the 911 call. Consequently, any testimony from Smith would have corroborated, not contradicted, the government's case. To the extent Smith would have testified differently from the 911 tape, she easily could have been subject to impeachment. Petitioner's counsel made a strategic choice not to pursue Smith's testimony after the 911 call because it was of little probative value and did not bolster Petitioner's defense. Therefore, the Petitioner has not shown his counsel was deficient or that he suffered any

26

prejudice as a result of his counsel's failure to call Nancy Smith as a witness.

Petitioner's reliance on McGahee v. United States, 570 F. Supp. 2d 723 (E.D. Pa. 2008) and United States v. Gray, 878 F.2d 702 (3d Cir. 1989) is misplaced.  In Gray, the movant's counsel was deemed ineffective because he did not interview *any* potential witnesses and this resulted in his "complete abdication of the duty to investigate."  Gray, 878 F.2d at 712.  The Third Circuit reasoned that "failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness" and that in such a situation, "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made."  Id. at 712.

In McGahee, the movant's counsel completely failed to investigate the movant's alibi defense.  The movant provided his counsel with names and addresses of several alibi witnesses and counsel failed to conduct any investigation into movant's alibi defense and did not present any of these witnesses' testimony at trial.  McGahee, 570 F. Supp. 2d at 730-36.  Further, movant's counsel testified that he made no strategic choice on whether to investigate; rather, he "elected not to investigate the alibi even though he knew none of the details about the potential defense, and nothing suggested that his investigation would be in

27

vain." Id. (citations omitted).  Therefore, the district court concluded it was unreasonable for the attorney to perform no investigation under those specific circumstances.  Id. at 736.

In this case, Petitioner's counsel did not completely fail to conduct any pretrial investigation and therefore Gray is inapplicable.  More importantly, unlike the attorney in McGahee, Petitioner's counsel knew the content of Nancy Smith's testimony because he had the recording of the 911 call in which Smith described the events she witnessed the night of the incident.  As discussed above, Smith's description in the 911 call was not inconsistent with the government's case and Petitioner's counsel, after losing his argument to admit the tape into evidence, strategically chose not to pursue Smith's testimony further by subpoenaing her to testify.  This choice was reasonable given the minimal probative value of the testimony.

"When an attorney knows the details of what a certain witness will testify to, and then chooses not to interview that proposed witness, the decision is due greater deference than when the attorney knows nothing about the potential testimony." McGahee, 570 F. Supp. 2d at 733.  In this case, a reasonable attorney would not have subpoenaed Nancy Smith to testify after the 911 tape was deemed inadmissible.  Smith's testimony was of little probative value, easily subject to cross examination and corroborated more than contradicted the testimony given by the

28

government witnesses.

Accordingly, Petitioner has failed to satisfy the first prong of the Strickland test and his ineffective assistance of counsel claim based on his counsel's failure to call Nancy Smith as a witness is denied.

> **E.   Failure to object at sentencing to errors in the presentence report regarding the calculation of Petitioner's base offense level and guideline range**

Petitioner next argues that his counsel was ineffective at sentencing because he failed to object to the Presentence Report ("PSR") which Petitioner alleges was inaccurate.  Specifically, Petitioner maintains that Petitioner's possession of a weapon should not have been used to enhance his sentence and that the guideline provision of 18 U.S.C. § 924(c) should not have been applied to him because he is a career offender.  Petitioner also argues that his base offense level should have been calculated as 32 not 37 and this would have resulted in a lesser guideline range.

The Petitioner does not contest that his criminal history category was properly calculated as VI or that he was properly categorized as a career offender.  Rather, Petitioner argues that the PSR miscalculated his sentencing guideline range as 360 months to life.  Petitioner contends that the proper guideline range should have been 210 - 262 months consistent with a base offense level of 32 and Criminal History Category VI.  Petitioner

argues that the PSR improperly used the statutory guideline range mandated for his conviction under Count 5, 18 U.S.C. § 924(c), and should have used the guideline range for Counts 1, 2 and 3 (Hobbs Act and Travel Act counts) instead.  Petitioner argues this would have resulted in his Base Offense Level being calculated as 32, not 37, and would have resulted in a substantial decrease to the recommended sentencing range.

Petitioner relies on United States v. Brown, 332 F.3d 1341 (11th Cir. 2003), in support of his argument.  The 11th Circuit in Brown held that a four-level enhancement under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(b)(5) for possession of a firearm in connection with another felony was inapplicable when a defendant is convicted under 18 U.S.C. § 924(c).  Brown, 332 F.3d at 1346.  The 11th Circuit reasoned that the conduct of possessing a firearm during the commission of a felony was sufficiently punished by § 942(c)'s statutory sentence and that any further enhancement for the same conduct under U.S.S.G. § 2K2.1(b)(5) would result in duplicative punishment.  Id.

In this case, there is no evidence that the Petitioner was subject to duplicative punishment because the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) was not applied in calculating his sentence.  Instead, the PSR calculated Petitioner's base offense level in accordance with U.S.S.G. § 2K2.4(c) and § 4B1.1(c).  Section 2K2.4(c) provides: "If the

defendant (1) was convicted of violation section 924(c) . . .; and (2) as a result of that conviction (alone or in addition to another offense of conviction), is determined to be a career offender under §4B1.1 (Career Offender), the guideline sentence shall be determined under § 4B1.1(c)."  Section 4B1.1(c) of the United States Sentencing Guidelines provides:

> If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows:
>
> (1) If the only count of conviction is 18 U.S.C. § 924(c) or § 929(a), the applicable guideline range shall be determined using the table in subsection (c)(3).
>
> (2) In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of--
> (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and
> (B) the guideline range determined using the table in subsection (c)(3).

U.S.S.G. § 4B1.1(c).  Section 4B1.1(c)(3), referenced above in 4B1.1(c)(2)(B), provides the "Career Offender Table for 18 U.S.C. § 924(c) or § 924(a) Offenders."  The Career Offender Table for 18 U.S.C § 924(c) provides a guideline range of 360 months to life when no acceptance of responsibility reduction under § 3E1.1 applies.

In this case, the Petitioner does not dispute that he is a

career offender as defined under the Guidelines.  The Petitioner was also convicted of multiple counts in which one was a violation of 18 U.S.C. § 924(c).  Consequently, U.S.S.G. § 4B1.1(c)(2) was properly applied in the PSR.

The greater guideline range, resulting from § 4B1.1(c)(2)(A) and (B), is that produced by subsection (B) incorporating the Career Offender Table outlined in U.S.S.G. § 4B1.1(c)(3).  The Petitioner does not dispute that he was not entitled to any § 3E1.1 reduction for acceptance of responsibility.  Consequently, the proper guideline range under the Career Offender Table was 360 months to life, in accordance with U.S.S.G. § 4B1.1(c)(3).

Therefore, the PSR properly determined that Petitioner's advisory sentencing guideline range was 360 months to life and the Petitioner's arguments to the contrary are without merit. Petitioner's claim for ineffective assistance of counsel based on his counsel's decision not to object to the PSR guideline calculations will be denied.

**F.  Actual Innocence Claims**

Finally, Petitioner claims he is actually innocent of Counts 5 and 8.  Petitioner argues that there was no evidence at trial identifying him as an assailant in the robbery or that he participated in the robbery in any way.  Petitioner maintains that his flight from the getaway vehicle alone was insufficient to convict him of aiding and abetting the use of a firearm in a

32

felony.

Further, Petitioner maintains that there was no evidence the Plaintiff was in control of a firearm sufficient to support a finding of constructive possession. The Petitioner points to a jury question asked during deliberations which he alleges demonstrates the jury's reluctance to convict him. The Petitioner does not challenge the court's response to this jury question in any way.

The court finds the Petitioner's claims of actual innocence on Counts 5 and 8 without merit. A claim of "actual innocence" relates to innocence in fact, not innocence based on a legal, procedural defect. A litigant must present evidence of innocence so compelling that it undermines the court's confidence in the trial's outcome of conviction; thus, permitting him to argue the merits of his claim. A claim of actual innocence requires a petitioner to show: (a) new reliable evidence not available for presentation at the time of the challenged trial; and (b) that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence. See House v. Bell, 547 U.S. 518 (2006); Schlup v. Delo, 513 U.S. 298, 324 (1995). Furthermore, the Supreme Court, in House, emphasized that the gateway standard for habeas review in claims asserting actual innocence is extremely demanding and permits review only in the "extraordinary" case. See House, 547 U.S. at 536-37

(citing <u>Schlup</u>, 513 U.S. at 327).

In this case, the Petitioner has cited no new reliable evidence in support of his claims of actual innocence.  Instead, the Petitioner challenges the sufficiency of the evidence presented at trial.  These arguments do not establish that Petitioner is actually innocent of the crimes charged.  The government presented sufficient evidence at trial that Petitioner was present at the robbery, traveled in the getaway vehicle, fled the police after the getaway vehicle crashed and was ultimately apprehended by Officer Fredericksdorf.  The government also presented evidence that a handgun was used during the robbery and two fully loaded .357 Magnum handguns were recovered from the vehicle by the police after it crashed.  Further, it is undisputed that Petitioner was a convicted felon at the time of this incident.  This was sufficient evidence from which a jury could convict Petitioner for aiding and abetting a violation of 18 U.S.C. § 924(c), using and carrying a firearm during and in relation to a crime of violence (Count 5) and being a felon-in-possession in violation of 18 U.S.C. § 922(g).

Therefore, Petitioner's claims of actual innocence on Counts 5 and 8 will be denied as a basis for vacating, altering or amending his sentence.

**G. Petitioner's Motion to Appoint Pro Bono Counsel**

The Petitioner has also filed a motion to appoint pro bono

counsel [Docket Item 40].  The Court has discretion to appoint a federal public defender or a CJA attorney to represent a habeas petitioner when the petitioner is financially eligible for CJA appointment and the appointment of counsel is in the interests of justice.  See 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).

In this case, the interests of justice will not be served by such an appointment because the court has determined that the record conclusively shows Petitioner is not entitled to relief. Consequently, Petitioner's motion to appoint pro bono counsel will be denied.

## VI.  CONCLUSION

For the reasons discussed above, Petitioner's motion to vacate, alter or amend his sentence pursuant to 28 U.S.C. § 2255 will be denied.  The record conclusively shows that the Petitioner is not entitled to relief and therefore no evidentiary hearing is necessary.  Accordingly, Petitioner's application for relief will be denied and the Clerk shall close this case upon the docket.  The accompanying Order will be entered.

## VII.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing

of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the standard recited above, the Court will deny a certificate of appealability.

The accompanying Order will be entered.


**March 12, 2013**                             **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge